**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1132-WJM-KMT

JANICE GUYAUX-MITCHELL,

     Plaintiff,

v.

OLD UNITED CASUALTY COMPANY,

     Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

     This matter is before the Court on Defendant's Motion for Summary Judgment ("Motion"). (ECF No. 29.)  For the reasons set forth below, the Motion is granted in part and denied in part.

## I. BACKGROUND

     The following relevant facts are undisputed, unless otherwise noted.  On June 19, 2012, Plaintiff was floating on an inflatable kayak on Lake Powell in Utah, which was tethered to a houseboat by a rope.  (ECF No. 32-2 at 1-2.)  As Plaintiff floated off of the houseboat's back side, a nearby powerboat began to reverse in Plaintiff's direction.  (*Id*. at 3-4.)  The powerboat continued backing toward Plaintiff, eventually trapping her between the houseboat and another boat moored along its left side.  (*Id*. at 4.)  The powerboat shredded the inflatable kayak, pulled Plaintiff under the water, and severed her left leg below the hip.  (*Id*. 4-5.)  Following the accident, Plaintiff recovered the limits of the powerboat owner's umbrella insurance policy.  (*Id*. at 5.)  However,

because the umbrella policy proceeds did not fully compensate Plaintiff for her injuries,

Plaintiff sought underinsured boater ("UIB") and medical payments benefits under the

houseboat's insurance policy underwritten by Defendant ("the Policy").  (*Id*. at 5.)

Defendant paid Plaintiff the Policy's full medical payment coverage limits on

June 3, 2014 (ECF No. 38-2), but has declined to award any UIB benefits to date.

(ECF No. 32.)  As a result, on April 29, 2013, Plaintiff initiated this action seeking

damages for Defendant's breach of contract, bad faith, and violations of Colorado

Revised Statutes §§ 10-3-1115 and 10-3-1116.  (ECF No. 1.)  On April 24, 2014,

Defendant filed the instant Motion seeking summary judgment on Plaintiff's claims.

(ECF No. 29.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem

Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

regarding a material fact depends upon whether the evidence presents a sufficient

disagreement as to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense, and a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must examine the facts in the light most favorable to the nonmoving party, and resolve factual ambiguities against the moving party.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).  The summary judgment standard thus favors a right to trial.  *See id.*

## III.  ANALYSIS

Under Colorado law,[1] courts construe insurance policies "using general principles of contract interpretation."  *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011).  Therefore, absent an ambiguity, a policy's language is construed according to its plain meaning.  *Id*.  However, in recognition of the unique relationship between insurer and insured, courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured."  *Id*. (citing *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  Courts look to the policy as a whole to determine whether an ambiguity is present.  *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005).  Disagreements regarding policy interpretation do not necessarily signal, or create, an ambiguity.  *Id*. (citing *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994)).  Rather, "[a]n insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation."  *Id*.

---

[1]  Neither party objects to the application of Colorado law, or suggests that another state's law applies, to the interpretation of the Policy.  Federal courts sitting in diversity apply the forum state's choice of law principles.  *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009).  Colorado choice-of-law rules provide that an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract."  *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  Plaintiff states that the Policy "was issued to a Colorado insured, in Colorado, and Plaintiff was and is a Colorado citizen."  (ECF No. 32 at 20.)  Colorado therefore has the most significant relationship to the Policy.  *See Berry & Murphy*, 586 F.3d at 808.

In the instant case, Plaintiff alleges that she is entitled to UIB benefits under the Policy, and that, despite receiving the medical payments benefits in full, Defendant's delay in payment was unreasonable and constituted bad faith. (ECF Nos. 1 & 32 at 1-3, 19-20.) Defendants have moved for summary judgment as to both issues, which the Court will consider in turn below.

## A.    UIB Coverage

Defendant argues that Plaintiff is barred from receiving UIB benefits based on the plain language of the Policy, which provides: "We will pay compensatory damages and expenses only to persons who are injured *while on, boarding, or leaving the covered yacht* (unless otherwise specifically excluded under this Policy)." (ECF No. 32-1 at 28 (emphasis added).) "Covered yacht" is discussed in greater detail under the "Insured property" section of the policy:

> **Insured property** means:
>
> a.) the **covered yacht** described on the Declarations Page, including the hull, inboard machinery, outdrive units, outboard motors, auxiliary motors, spars, sails, rigging, appliances, furniture, and other permanently installed equipment on board including built-in home entertainment components and televisions; and all **unattached equipment and accessories** generally required to be on board for the use, operation, navigation or maintenance of the yacht; . . .

(*Id.* at 9 (emphasis in original).)

Defendant argues that "covered yacht" is defined clearly and with particularity, and indicates that Plaintiff was not "on, boarding, or leaving" the houseboat at the time of the injury. (ECF No. 29 at 7-8.) In her affidavit, Plaintiff states that at the time of the accident she was floating on an inflatable kayak that was "tethered to the houseboat by a rope . . . immediately off of its back/left side." (ECF No. 32-2 at 2-3.) Plaintiff states

4

that the term "covered yacht" is undefined, and that the lack of definition "creates the
impression in the mind of a reasonable insured that an inflatable raft attached to the
houseboat becomes part of the houseboat and, accordingly, a person in the raft is
considered to be 'on' the covered yacht."  (ECF No. 32 at 31.)  The term "covered
yacht" is not elsewhere defined in the Policy.

The Court agrees with Defendant that the Policy language is clear.  While
"covered yacht" may be included under the heading of "insured property," it is
nonetheless defined.  The Policy language points to the description of "covered yacht"
on the Policy's declarations page, which provides the houseboat's make, model, serial
number, and other basic physical characteristics of the vessel.  (ECF No. 32-1 at 1.)
The terms that follow under "insured property" include the houseboat's fixtures, and
"other permanently installed equipment."  (*Id*. at 9.)  Neither the declarations page nor
the additional descriptors contained under "insured property" expand the definition of
"covered yacht" so as to include an inflatable raft tethered to the houseboat.

Expanding the definition of "covered yacht" to include everything defined as
"insured property" is also unavailing.  (*Id*.)  The Policy includes "unattached equipment
and accessories" within the scope of insured property, which itself is defined as:

> all detached or easily detachable equipment and accessories used in your
> yacht's use, operation, or maintenance, including but not limited to: oars, oar
> locks, paddles, furniture, appliances, anchors, life preservers, extra fuel
> containers, lines, seat cushions, fire extinguishers, flares, horns, flags, batteries,
> battery chargers, pumps, remote controls, navigational equipment, portable
> navigational computer hardware and software, tarpaulins (and similar protective
> covers), portable running lights, tie ropes, boarding ladders, and convertible
> (bimini) tops.
> . . .
>
> It does <u>not</u> include . . . personal watercraft including, without limitation,

5

hydrocycles, jet skis, wave runners, wind-surfers, or similar types of vessels, unless specifically endorsed on this policy . . . [or] personal effects.

(*Id*. at 10 (emphasis in original).)

"Personal effects" include "fishing equipment, waterskis, and other sporting equipment." (*Id*.)  The exclusions for "personal watercraft" and "other sporting equipment" encompass the inflatable kayak on which Plaintiff was injured.  Therefore, the Court finds that the kayak is not included in the definition of "covered yacht" under the Policy.

Plaintiff urges the Court to follow the reasoning of several cases in which courts have interpreted similar uninsured or underinsured provisions in the automobile context. (ECF No. 32 at 28.)  However, all of the cases cited by Plaintiff are from jurisdictions outside Colorado, and none involve UIB benefits or interpretation of an insurance policy similar to that at issue here.  Plaintiff also cites no authority indicating Colorado courts would apply an analysis similar to that of the cases cited.  Therefore, because the cases are not analogous to this matter in terms of their facts or applicable law, the Court declines to apply them here.

Plaintiff raises two additional arguments in her briefing.  First, Plaintiff argues that the Policy's "hit-and-run" limitation renders the coverage illusory, and therefore the Court must find that Plaintiff is entitled to UIB benefits.  (ECF No. 32 at 23.)  The Policy defines an underinsured watercraft as a "watercraft of any type . . . which is a 'hit-and-run watercraft.'"  (ECF No. 32-1 at 12.)  A "hit-and-run watercraft" is defined as "a watercraft of any type whose operator or owner cannot be identified . . . ."  (*Id*. at 11.) However, underinsured coverage is not triggered until the claimant has identified the party who caused the injury, and determined that the party's insurance coverage is

6

inadequate to cover the claimant's loss.  Thus, the Court agrees with Plaintiff that if this provision were given effect, there could never be a claim for underinsured coverage under the Policy.  "[S]uch a clause would in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability."  *O'Connor v. Proprietors Ins. Co.*, 696 P.2d 282, 285 (Colo. 1985).  The Court thus gives no legal effect to the "hit-and-run" provision of the Policy.  Nevertheless, as discussed above, Plaintiff has failed to satisfy the valid "on, boarding, or leaving" Policy provision, which is also required to obtain UIB coverage.  Plaintiff has therefore failed to show that she is entitled to UIB benefits, even ignoring the "hit-and-run" provision.

Second, Plaintiff argues that the UIB exclusion for injuries sustained "while parasailing, kite-skiing, or any similar sport in which a person(s) or object(s) become airborne," indicates that "on, boarding, or leaving" has a broader meaning.  (ECF No. 32 at 26-27.)  According to Plaintiff, the exclusion implies that some activities conducted off of the houseboat—such as floating on a tethered raft—are covered if the activity does not involve becoming "airborne."  (*Id*. at 27.)  Plaintiff states that if it were true that an insured is not considered "on" the houseboat while floating on a tethered raft, the exclusion would be meaningless.  (*Id.*)

The Court must interpret the Policy "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless."  *Copper Mountain, Inc. v. Indus. Sys., Inc*., 208 P.3d 692, 697 (Colo. 2009) (quotation marks omitted).  In doing so, the Court finds that the decision to exclude "airborne" activities under the UIB section of the Policy was deliberate, and does not create an ambiguity in coverage.  The Coverage "D" Medical Payments

7

portion of the Policy supports the Court's conclusion.  That section specifically provides coverage under circumstances similar to the UIB section for bodily injury sustained while "occupying, boarding, or leaving a covered yacht."  (ECF No. 32-1 at 27.) However, medical payments coverage is alternatively provided if the insured is "engaged in waterskiing, aquaplaning, or similar recreational activities *while being towed from a covered yacht . . . .*"  (*Id.* (emphasis added).)  If this additional language were included in the UIB portion of the Policy, Plaintiff would likely be entitled to UIB benefits.  Therefore, the Court finds that Defendant's decision to provide coverage for activities conducted off of the houseboat in some circumstances, while excluding coverage for those same activities under other circumstances, does not reflect ambiguity or conflict among the Policy provisions, and accordingly does not entitle Plaintiff to UIB benefits.

Having reviewed the relevant language of the Policy and the facts of this matter, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's claims for UIB benefits, including any claims for breach of contract, bad faith, or violations of Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116 related to such benefits.

**B.      Bad Faith and Unreasonable Delay**

Defendant further argues that Plaintiff's claims for bad faith and violations of Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116 fail as a matter of law.  (ECF No. 29 at 10-12.)  As stated above, the Court agrees with Defendant regarding Plaintiff's claim for UIB benefits, because Defendant was not obligated to provide UIB coverage in this case as a matter of law.  However, Plaintiff's bad faith and Colorado

8

Revised Statutes §§ 10-3-1115 and 10-3-1116 claims also apply to medical payments coverage under the Policy.  (ECF No. 32 at 1-2.)  Although Defendant paid Plaintiff the Policy's full medical payments coverage limits on June 3, 2014 (ECF No. 38-2), Plaintiff argues that Defendant failed to timely investigate whether medical payments coverage was available, and unreasonably delayed providing such coverage.  (ECF No. 32 at 1-2.)  The Court discusses each claim in turn.

       1.   <u>Bad Faith</u>

Under Colorado common law, all insurance contracts "contain[] an implied duty of good faith and fair dealing."  *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004).  "[A] separate action in tort [arises] when the insurer breaches its duty of good faith and fair dealing."  *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004) (en banc).  "When an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim."  *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).  "What is reasonable under the circumstances is ordinarily a question of fact for the jury."  *Baumann v. Am. Family Mut. Ins. Co.*, 2012 WL 122850, at *4 (D. Colo. Jan. 17, 2012).

Here, Defendant argues that Plaintiff cannot show that Defendant acted unreasonably, or that it knowingly or recklessly disregarded the validity of Plaintiff's claim.  (ECF No. 38 at 20-21.)  Specifically, Defendant argues that Plaintiff's demand for medical payments coverage was not made on July 31, 2012, as Plaintiff argues

(ECF No. 32 at 20), but was made on February 12, 2014 during the deposition of Russ

Hodge, the claims adjuster handling Plaintiff's case.  (ECF No. 38 at 21-22).  Defendant

asserts that once it did receive Plaintiff's demand for medical payments benefits, it

immediately investigated coverage and made the full payment to Plaintiff.  (*Id*. at 22.)

Defendant further states that Plaintiff's Complaint fails to assert any claim for medical

payments coverage or any claim related to Defendant's conduct related to such

coverage.  (*Id.*)

Plaintiff asserts that once Defendant received a demand for coverage under any

portion of the Policy, Defendant had a duty to promptly investigate all possible

coverages, not just those specifically demanded.  (ECF No. 32 at 1-2.)  Plaintiff's

position finds support in the deposition testimony of Russ Hodge:

> Q. And would you agree that an insurance company needs to look at all possible
> coverages and pay under any that may apply whether or not the coverage is
> pointed out to you by the insured?
>
> A. Yes.
>   . . .
> Q. And as you look at Exhibit 1 on the policy now, and specifically this medical
> payments coverage that had the $25,000 limit that we looked at earlier, can
> you say whether or not this should have been covered or whether you would
> have covered it had you looked at it?
>
> A. I don't recall looking at it.  It's possible there could have been coverage there.

(Hodge Dep. (ECF No. 32-3) pp. 51, 62.)

Mr. Hodge's deposition testimony indicates Defendant first received Plaintiff's claim for

Policy benefits on July 31, 2012 (*Id*. at p. 69), and the medical payments benefits were

paid on June 3, 2014 (ECF No. 38-2).  Mr. Hodge further admitted that he was the only

person handling Plaintiff's claim.  (Hodge Dep. at p. 35.)  Given this evidence, a

reasonable jury could find that Defendant's conduct was unreasonable, and that Defendant knowingly or recklessly disregard the validity of Plaintiff's claim.  *Sanderson*, 251 P.3d at 1217.

Mr. Hodge's deposition testimony also defeats Defendant's argument that summary judgment is warranted due to Plaintiff's failure to specifically allege any claims related to medical payments coverage in her Complaint.  Based on Mr. Hodge's testimony, a reasonable jury could find that all of Defendant's duties under the policy were triggered once Plaintiff gave notice of her injury, including the duty to investigate medical payments coverage.  Moreover, Plaintiff's Summary of Claims contained in the Final Pretrial Order in this matter includes Plaintiff's claims for medical payments coverage.  (ECF No. 41 at 2.)  The Tenth Circuit has held that "the pretrial order is treated as superceding the pleadings and establishing the issues to be considered at trial."  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (citation omitted).  Summary judgment on Plaintiff's bad faith claim is therefore denied.

2.  Unreasonable Delay

Plaintiff's statutory claim is based on Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116, which provide for a cause of action against an insurer that has unreasonably delayed or denied a claim.  This cause of action "is in addition to, and does not limit or affect, other actions available by statute or common law."  *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) (internal quotation marks omitted).  Colorado Revised Statute § 10-3-1115(a) provides that:  "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  The statute explains that

11

an insurer's actions are unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id.* at § 10-3-1115(2).  "Determining reasonableness under the circumstances is ordinarily a question of fact for the jury but in appropriate circumstances may be decided as a matter of law." *Tadehara v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 4048782, at *5 (D. Colo. Sept. 12, 2011).

The deposition testimony of Mr. Hodge is equally relevant here and, based on that testimony, a reasonable jury could find that Defendant unreasonably delayed in paying Plaintiff's claim for medical payments benefits.  Accordingly, summary judgment on Plaintiff's statutory claim is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Defendant's Motion for Summary Judgment (ECF No. 29) is GRANTED IN PART and DENIED IN PART;

2.   The Motion is GRANTED as to Plaintiff's claims related to underinsured boater insurance under the Policy as detailed in this Order;

3.   The Motion is DENIED in all other respects; and

4.   This matter remains pending as to Plaintiff's claims related to medical payments coverage under the Policy.

Dated this 9th day of February, 2015.

BY THE COURT:

_____

William J. Martínez
United States District Judge